## CHANDLER et ux. v. CITY STATE BANK IN WELLINGTON.

### No. 5099.

Court of Civil Appeals of Texas. Amarillo.
Jan. 8, 1940.

R. H. Templeton and R. H. Cocke, both of Wellington, for appellants.

Luther Gribble, of Wellington, for appellee.

JACKSON, Chief Justice.

This is an action in trespass to try title instituted by appellee, the City State Bank in Wellington, in the District Court of Collingsworth County against the appellants, W. F. Chandler and Lula Belle Chandler, husband and wife, to recover title and possession of the following tracts of land situated in Collingsworth County, Texas. All that part of the southeast quarter of section No. 66 in block 10 that lies south of the Wichita Falls & Northwestern Railway Company right of way, containing 147.7 acres; the 5 acres, more or less, of the southeast quarter of said section which lie north and east of said railway right of way and also the southeast 25 acres of the northeast quarter of said section, and a tract of 130 acres out of said northeast quarter. These tracts of land are described separately and with sufficient detail in the petition.

The alleged cause of action pleaded in the alternative by appellee will not be stated since no question is presented in this appeal relative to the disposition thereof.

The appellants filed a disclaimer to all their right, title or interest in the land described in appellee's petition save and except the west 40 acres of the southeast quarter of said section.

By way of answer and cross-action they pleaded that they are husband and wife and have been such at all the times involved in this controversy; that they acquired title to the part of the southeast quarter of section 66 which lies south of the right of way of the Wichita Falls & Northwestern Railway Company on December 3, 1915; that on November 21, 1917 they acquired title to the southwest quarter of said section 66 and since that time the southwest quarter of the section and the west 40 acres of the southeast quarter of the section have been claimed, used and occupied by them as their homestead.

On December 18, 1925 they alleged that they obtained a loan from the Federal

Land Bank at Houston, Texas, for the sum of $5,400 for which they executed their note and a deed of trust lien on the land owned by them in the southeast and northeast quarters of said section to secure the payment of such loan; that $2,-000 of the money so borrowed was advanced to them by the Federal Land Bank to take up and extend, among other debts, a note the principal and interest of which amounted to $2,160 and that said west 40 acres of the southeast quarter of said section, although a part of their 200 acre homestead, was liable for its proportionate part of the $2,160; that at the time of negotiating this loan the Federal Land Bank agreed that in lieu of the west 40 acres its lien should cover the 5 acres above described lying in the southeast quarter north of the railroad and the 25 acres above described out of the northeast quarter of said section against which there was no lien but by mistake said west 40 acres was included in the deed of trust of the Federal Land Bank and the 5 acre tract and the 25 acre tract were left unencumbered.

They pleaded the close and confidential business relations between themselves and appellee and its predecessor; that such relations had existed for approximately 25 years; that they had relied upon and trusted the appellee for advice in the transaction of their business and in the preparation of legal papers they were required to execute; that they became indebted to the appellee in various sums and in 1933 executed and delivered to it three notes, one for $4,400 one for $600 and one for $900, and executed a second lien covering all the land described in the deed of trust given to the Federal Land Bank save and except the west 40 acres of the southeast quarter of said section which had theretofore been designated as a part of their homestead; that in preparation of the instruments for the second lien the agents and employees of the appellee did omit said west 40 acres but fraudulently included the 5 acre tract out of the southeast quarter and the 25 acre tract out of the northeast quarter of said section; that such fraud was not discovered by appellants until the title to their land was investigated immediately preceding the parole agreement between the appellants and appellee hereinafter alleged; that in the contract in which they agreed to execute to appellee this second lien on the land covered by the deed of

trust held by the Federal Land Bank they also agreed that the deed of trust should cover lots 13 to 24, inclusive, in block 99, lots 20 to 22, inclusive, in block 122, lots 6 to 9, inclusive, in block 141, and lots 1 to 4, inclusive, in block 215 in the city of Wellington; that the second deed of trust was executed and delivered to appellee for the purpose of securing appellants' debt to it evidenced by the notes last mentioned.

On or about August 1, 1938, with the existence of the relation recited and the indebtedness between the parties as above stated, the appellee through its agents began negotiations with the appellants for the announced purpose of winding up and settling the indebtedness between them; that such negotiations resulted in an oral contract in which appellants agreed to deliver possession of the 267 acres of land owned by them in the east half of said section 66 and to exchange the equity held by them in the entire 267 acres for and in consideration of the payment by appellee of the indebtedness the appellants owed the Federal Land Bank; the cancellation and delivery to them of the $4,-400 note held by the appellee secured by a second lien on the land and the town lots; the release of the lots in block 215 and the extension of the due date of the $900 note held by appellee, all of which terms and conditions were agreed to by appellee but on account of a judgment against appellant, W. F. Chandler, which constituted a lien against the entire 267 acres, appellee declined to accept a deed of conveyance from appellants but promised that it would acquire title to said 267 acres by a friendly foreclosure of its lien thereon; that appellants agreed to this proceeding but in connection with the foreclosure the appellee requested the appellants to execute an instrument asking the Federal Land Bank to transfer to appellee the amount then matured and due on the loan to said Federal Land Bank together with the lien securing the payment of the same; that the amount so matured was evidenced by an interest coupon note for the sum of $537.72 and taxes amounting to $254, which had been paid by said Federal Land Bank; that to induce appellants to sign this instrument appellee represented that it was necessary to secure such written transfer to enable it to acquire title to said 267 acres of land clear of other liens including the judgment lien, and relying on such represen-

tations, such instrument was executed by appellant, W. F. Chandler; that such transfer was secured after which appellee foreclosed its lien on the 267 acres and also foreclosed the lien so transferred to it by the Federal Land Bank and thereby acquired title not only to the 267 acres covered by its second lien but also secured title to the west 40 acres of the southeast quarter of said section, which was of the market value of $4,000.

The appellants ask for judgment removing the cloud on the title to said 40 acres created by the foreclosure of the lien transferred to appellee by the Federal Land Bank.

In reply to the alleged oral agreement for the exchange of appellants' equity in the 267 acres for the consideration recited in appellants' answer and cross-action, the appellee pleaded the statute of frauds. The court in effect sustained this plea by directing a verdict in favor of appellee and rendering judgment that the City State Bank in Wellington have and recover the title and possession of the land from appellants who perfected this appeal and ask for a review of such judgment.

The appellants challenge as error the action of the court in holding that the oral contract which they had set out in their petition was for the sale of real estate and therefore within the statute of frauds.

It is admitted that the note given to the Federal Land Bank evidenced a bona fide debt and was secured by a valid lien which, among other tracts, covered the west 40 acres of the southeast quarter of section 66. It is likewise conceded that the notes executed to appellee evidenced bona fide debts which had been secured by a second lien and default had been made in the payment by appellants of the note to the Federal Land Bank as well as the notes to appellee.

The appellants owned the title, both legal and equitable, to the land described in the pleadings subject to the existing liens covering said lands to secure the payment of such indebtedness.

The written instrument, signed by the appellant, W. F. Chandler, requesting the Federal Land Bank to transfer its debt and lien or a portion thereof to appellee, was as follows: "This is to certify that I am indebted to the City State Bank in Wellington, Texas which is secured by a deed of trust and since they have agreed to take up the loan owing the Federal Land Bank of Houston and accept title to the security by way of friendly foreclosure in order to have a perfect and merchantable title to the land I hereby ask that the lien securing the past due installments and/or the entire loan be transferred by the Federal Land Bank to the City State Bank in Wellington, Texas in consideration of their releasing me from any further liability in connection with the one promissory note for $4400.00 and accumulated interest thereon. Said bank is to release the three houses south of jail from the $900.00 note and leave the lien against the other houses."

This instrument indicates that the appellee was to purchase the debt and lien, or a portion thereof, held by the Federal Land Bank and obtain title to the security, which was the land held by the bank, by a foreclosure, and it is conceded that the Federal Land Bank held a valid debt and lien to secure its debt and the west 40 acres of the southeast quarter was liable for its proportionate part thereof. The testimony of an officer of the bank tends to show that this written proposition was made by appellants to the bank and accepted by the bank and the testimony of Mr. Chandler which was excluded shows that the oral agreement upon which he sued was made subsequent to the time of his execution of this written instrument. There is no contention that any term, provision or condition of the oral contract was omitted from the written instrument by mistake, fraud or accident, hence under the record the execution of such written agreement becomes immaterial in determining appellants' contentions.

The appellants alleged that in an oral contract they agreed to exchange or sell to appellee their equity in the entire 267 acres of land for certain stipulated considerations stated in their pleading.

Article 1288 of the Revised Statutes is as follows: "No estate of inheritance or freehold, or for a term of more than one year, in lands and tenements, shall be conveyed from one to another, unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

Article 3995 of the Revised Statutes provides in part that:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * *

"Upon any contract for the sale of real estate or the lease thereof for a longer term than one year; * * *."

██ ██ An oral contract for the exchange of land is unenforceable under the statute of frauds. Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A.L.R. 1505; Laufer et al. v. Powell et al., 30 Tex.Civ.App. 604, 71 S.W. 549, writ denied. Appellants' claim that if appellee had complied with its contract it would have cleared their title to the west 40 acres of the southeast quarter of the section would not take the contract out of the statute of frauds since the Supreme Court held in Sprague et al. v. Haines, 68 Tex. 215, 4 S.W. 371, that a parol contract to clear the title to lands for another and after such title was cleared receive as compensation one-half of the land is unenforceable because within the statute.

██ In 20 Tex.Jur. 279, para. 70, the author says:

"The words 'any contract for the sale of real estate', as used in the statute, include every agreement which contemplates the alienation of an existing interest in land. If the consideration for a promise or contract is a conveyance of real estate, the case is held to be within the purview of the statute, and the undertaking is not binding unless it is evidenced by some instrument in writing or unless the agreement has been acted on by the parties.

" 'The effect of the provision, as expounded by the courts, is to render unavailing to the parties, as the ground of a claim, any parol contract, in whatever shape it may be put, by which either of them is to part with real estate.' "

██ It is also held that an executory contract for the sale of land cannot be rescinded by an oral agreement. 22 Tex. Jur. 306, para. 97. See the following cases in support of the text in Texas Jurisprudence: Waggoner v. Herring-Showers Lumber Co. et al., 120 Tex. 605, 40 S.

W.2d 1; Hooks et al. v. Bridgewater, 111 Tex. 122, 229 S.W. 1114, 15 A.L.R. 216.

The record fails to show that appellee paid or had transferred to it the entire debt and lien of the Federal Land Bank or made any improvements on any of the land acquired by foreclosure and no sufficient part performance of the oral contract is shown to relieve it from the inhibition of the statute.

In Robertson v. Melton, supra, 115 S.W.2d at page 625, paragraph 8 of the syllabi, it is said: "In action for breach of land exchange contract where defendant refused to perform because of statute of frauds, the statute could not be disregarded, notwithstanding a wrong was done to plaintiff and plaintiff had suffered a possible loss. Rev.St.1925, art. 3995."

██ In our opinion, the conclusion that appellants' allegation that by oral contract they agreed to exchange their interest in the 267 acres for the consideration alleged was an oral contract for the sale of land and hence unenforceable because of the statute of frauds.

If we are correct in the foregonig conclusion it is unnecessary to pass on the assignments presenting as error the action of the court in excluding certain testimony by which appellants offered to prove the terms of the alleged oral contract.

The judgment is affirmed.